IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pascal Lombardot, Individually and
as Administrator of the Estate of
Yu-Yuan Lin, Deceased,
         Appellant

      v.

Wissahickon School District,
Dominic McNamee, Commonwealth
of Pennsylvania, Department
of Transportation, Sidelines Tree
Removal, Delaware Valley Regional
Planning Commission, Montgomery
County, Whitpain Township,
McMahon Associates, Inc., Simone
Collins, Inc., The Waetzman Planning
Group, Inc.,Urban Partners, Chambers
Associates, Inc., Herbert H. Metz, Inc.
d/b/a Metz Engineers, Guidemark, Inc.,
Asplundh Tree Expert, LLC, Davey
Resource Group, Inc., The Davey Tree
Expert Company, Blue Bell Meadows,
LLC d/b/a Bluestone Country Club,
BSK Meadows Realty Partners, LP,
Meadows Realty GP, LLC, Goodman
Properties, and Pennidhi Vee Karlakunta

:  **CASES CONSOLIDATED**

:  Nos. 1642 & 1643 C.D. 2024

:  Nos. 515 & 602 C.D. 2025

:  Submitted: May 12, 2026

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE MATTHEW S. WOLF, Judge

***<u>OPINION NOT REPORTED</u>***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: June 18, 2026

       In these consolidated cases, Pascal Lombardot (Appellant), Individually

and as Administrator of the Estate of Yu-Yuan Lin (Estate), Deceased (Decedent),

appeals from two orders entered on November 21, 2024, by the Court of Common Pleas

of Montgomery County (trial court). Through those orders, the trial court granted summary judgment in favor of Wissahickon School District (School District), Dominic McNamee (McNamee), and Whitpain Township (Township) (together, Appellees) on Appellant's wrongful death and survival claims stemming from a fatal motor vehicle accident. In this Court, Appellant argues that the trial court erred and abused its discretion in granting summary judgment because it improperly resolved disputed issues of material fact and, relatedly, failed to consider Appellant's expert reports.

Also before the Court are the Township's Motions to Quash Appeal (Motions to Quash), in which the School District and McNamee join.[1] The Township argues that this Court is without jurisdiction to decide these appeals because the trial court's November 21, 2024 orders are not final orders disposing of all claims against all parties. The Township accordingly contends that the appeals are interlocutory and must be quashed.

Upon review, we grant the Township's motions and quash these appeals.

## I. BACKGROUND AND PROCEDURAL HISTORY

The pertinent facts and procedural history underlying this case may be summarized as follows. Appellant's claims arise from a motor vehicle accident that occurred on January 14, 2019, at the intersection (Intersection) of Morris Road (also known as State Route 2001) and Plymouth Road (a Township road) in the Township. Both roads have a single lane of travel in each direction. Traffic on Morris Road proceeds in a general east-west direction and is uncontrolled at the Intersection. Traffic on Plymouth Road proceeds in a general north-south direction and reaches its northern terminus at the Intersection, which is controlled by a stop sign and stop line.

---

[1] The School District and McNamee filed a written joinder at Nos. 1642 and 1643 C.D. 2024 on April 21, 2025. Although they did not file an analogous joinder at Nos. 515 and 602 C.D. 2025, they incorporate the same arguments into their brief and request therein that the appeals be quashed. *See* School District and McNamee Br., Nos. 515 and 602 C.D. 2025, at 1-10.

Just prior to the accident, McNamee was driving a Blue Bird school bus for the School District in the eastbound lane of Morris Road approaching the Intersection. Pennidhi Karlakunta (Karlakunta) was driving a Toyota Camry in the northbound lane of Plymouth Road and was stopped at the stop sign/stop line at the Intersection. Decedent was driving an Infiniti sedan in the westbound lane of Morris Road toward the Intersection. The accident occurred when Karlakunta attempted to make a left-hand turn into Morris Road's westbound lane. As he negotiated the turn, he collided into the front right corner of the school bus, which then veered left into Morris Road's westbound lane and collided with Decedent's vehicle. Decedent sustained fatal injuries from the crash.

Decedent is survived by her husband (Appellant) and two minor children. Appellant filed two wrongful death/survival actions in the trial court against multiple defendants, which actions were consolidated on May 17, 2021. Appellant filed first, second, and third amended complaints, the last of which is operative (Third Amended Complaint). Pertinent here, among the 22 defendants[2] named in the suit are, *inter alia*, the School District, McNamee, the Township, The Waetzman Planning Group, Inc.

---

[2] Karlakunta is not one of the 21 named defendants in the Third Amended Complaint, as Appellant settled with Karlakunta prior to the institution of this litigation. The Township added Karlakunta to the suit as an additional defendant on February 12, 2021. (Joinder Complaint, Original Record (O.R.) at Seq. No. 48.) Following the accident, Karlakunta was charged with violations of (1) Section 3714 of the Vehicle Code, 75 Pa.C.S. § 3714(b) (careless driving, unintentional death), and Section 3323, 75 Pa.C.S. § 3323 (stop signs). Karlakunta pled guilty to the stop sign charge and was convicted of the careless driving charge after a bench trial before a magisterial district judge. Karlakunta appealed the latter conviction to the court of common pleas, which likewise found him guilty.

(Waetzman),[3] and Goodman Properties.[4]  Against the Township, Appellant alleged that excess tree and foliage cover at the southwest corner of the Intersection blocked Karlakunta's view of eastbound traffic.  Appellant further alleged that the Township placed the stop sign and stop line on Plymouth Road at a distance too far from Morris Road to provide an adequate view of oncoming traffic.  Against the School District and McNamee, Appellant alleged that McNamee was negligent in inspecting and driving the school bus.

The School District, Township, and McNamee filed cross-claims against multiple defendants, including Waetzman.  (O.R. at Seq. Nos. 341, 358.)  It is undisputed for purposes of these appeals that the other 17 named defendants have been dismissed or settled out of the suit.  It also is undisputed that Waetzman was neither dismissed nor settled out of the case at any point prior to the trial court's entry of the summary judgment orders now on appeal, and those orders expressly do not apply to Waetzman.[5]

Regarding Goodman Properties' dismissal from the suit, on September 6, 2024, Appellant filed a Petition for Approval of Settlement and Allocation of Wrongful Death Act and Survival Act Proceeds, in which he sought court approval to allocate $850,000 in settlement proceeds received from multiple defendants, including "Blue Bell Meadows." (Supplemental Reproduced Record (S.R.) at 106b.)  According to the

---

[3] Appellants alleged that Waetzman provides civil and highway engineering and design services to the Township.  (Third Amended Complaint, ¶ 18; R.R. at 7a.)

[4] The Third Amended Complaint refers to Goodman Properties collectively with several other named defendants as the "Bluestone defendants." (Third Amended Complaint, ¶¶ 37-39; Reproduced Record (R.R. at 10a.)  Appellant alleged that the Bluestone defendants owned and operated a country club situated on land abutting the Intersection on its southwest corner. *Id.* ¶¶ 38, 53; R.R. at 10a, 13a.

[5] Although Waetzman was served with Appellant's several complaints and Appellees' cross-claims, it did not file answers or otherwise participate in the litigation.

4

petition, if the proposed allocations were approved and the settling parties dismissed from the suit, only the School District, McNamee, and the Township would remain in the case. (Petition, 9/6/24, ¶ 16; S.R. at 106b.) Attached to the Petition as Exhibit "C" was a proposed Settlement Agreement and Joint Tortfeasor Release between Appellant and the several settling defendants, including "Blue Bell Meadows, LLC d/b/a/ Bluestone Country Club/BSK Meadows Realty Partners LP/Meadows Realty GP, LLC/**Goodman Properties** (collectively "Blue Bell")[.]" (S.R. at 173b) (emphasis provided). "Blue Bell" is identified in the settlement agreement as one of the "Settling Defendants" in favor of whom Appellant released all claims. *Id.* at 173-74b, 177b-78b. The trial court approved the proposed settlement and proceeds allocations by order entered November 4, 2024. (O.R. at Seq. No. 563; R.R. at 523a.)

In the meantime, the trial court entered the controlling case management order on December 13, 2023, which established deadlines for the completion of fact discovery (May 6, 2024), the service of Appellant's expert reports (June 5, 2024), the service of Appellees' expert reports (July 5, 2024), and the filing of dispositive motions (August 5, 2024).[6] (S.R. at 093b.) Appellant did not identify any expert witnesses or serve any expert reports by the June 5, 2024 deadline. The Township timely produced the expert report of Brian Keaveney on July 3, 2024. The School District and McNamee did not serve any expert reports.

The Township moved for summary judgment on August 2, 2024. In its motion, the Township argued that Appellant's claims against the Township were barred because Appellant failed to produce any evidence, including expert opinion, establishing the applicability of any exceptions to immunity under Section 8542(b) of

---

[6] This case management order was entered in response to the Joint Motion for Extraordinary Relief filed by the School District and McNamee requesting an extension of the original discovery deadlines established by the trial court. All parties consented to the requested relief. (O.R. at Seq. No. 529.)

the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8542(b). (R.R. at 351a.) The Township also asserted that any evidence proffered by Appellant after the expiration of the discovery deadlines should be excluded as untimely and prejudicial. *Id.*

The School District and McNamee moved for summary judgment on August 5, 2024, arguing that Appellant did not produce any evidence, expert or otherwise, establishing (1) McNamee's negligence in operating the school bus, (2) that any such negligence was a proximate cause of the underlying accident, or (3) that Karlakunta's operation of his vehicle was *not* the proximate cause of the accident as a matter of law. *Id.* at 411a-21a.

Appellant responded to the Township's summary judgment motion on August 30, 2024. With the response, Appellant served, for the first time, the expert report of Kevin O'Conner, dated August 12, 2024. (R.R. at 137a.) In the report, Mr. O'Conner opined concerning the Township's liability for the design and physical characteristics of the Intersection. *Id.* at 154a-55a. Appellant filed a response to the School District's and McNamee's summary judgment motion on September 3, 2024. Appellant attached to that response, again for the first time, the expert report of Henry Lipian, who opined concerning McNamee's alleged negligence in inspecting and operating the school bus prior to the accident. (R.R. at 92a, 112a-14a.)

The trial court granted both summary judgment motions by orders entered November 21, 2024. The next day, Appellant appealed both orders, which appeals were docketed in this Court at Nos. 1642 and 1643 C.D. 2024. The trial court issued a Pa.R.A.P. 1925(a) opinion on December 26, 2024. As to Appellant's claims against the School District and McNamee, the trial court concluded that the evidence and testimony presented at Karlakunta's criminal trial established as a matter of law that Karlakunta's negligence was the proximate cause of the accident and Decedent's death.

6

(R.R. at 487a.) The trial court noted that there was no evidence in the record that could establish McNamee's negligence and, vicariously, the School District's liability. *Id.* at 488. Because the Lipian report was submitted by Appellant after the deadline for doing so, the trial court did not consider it in its analysis. *Id.* at 488a-89a. The trial court further noted that, even if McNamee's negligence could be established, the "sudden emergency doctrine" would preclude a finding of liability. *Id.* at 489a.

As to Appellant's claims against the Township, the trial court concluded that Appellant did not produce any evidence establishing the applicability of any of the exceptions to immunity in Section 8542(b) of the Tort Claims Act. Specifically, the trial court concluded that Appellant did not establish the applicability of any of the three exceptions asserted in the Third Amended Complaint, namely, the real property; trees, traffic controls, and street lighting; and streets exceptions. *See* 42 Pa.C.S. § 8542(b)(3), (4), (6)(i). As to the real property exception, the trial court noted that Section 8542(b)(3) excludes "trees, traffic signs, and other traffic controls" from the definition of real property and further requires that the subject property be in the care, custody, or control of the local agency. (R.R. at 490a; 42 Pa.C.S. § 8542(b)(3), (b)(3)(i)) Because Appellant's claims against the Township related to tree and foliage cover on private property not owned by the Township and the placement of the stop sign and stop line on Plymouth Road, the real property exception to immunity could not apply. (R.R. at 490a-91a.)

As to the streets exception, the trial court concluded that Appellant did not establish a dangerous condition on Plymouth Road that contributed to the accident. As with the Lipian report, the trial court declined to consider the O'Conner report in its analysis because Appellant served it months after Appellant's expert discovery deadline passed. *Id.* at 491a-92a. In the alternative, the trial court concluded that, even if the streets exception applied, the evidence of record established as a matter of law

7

that Karlakunta's negligence, and not any condition of Plymouth Road, caused the accident and Decedent's death. *Id.* at 492a.

Last, as to the trees, traffic controls, and street lighting exception, the trial court concluded that Appellant failed to establish that any condition on property owned by the Township caused the accident. The trial court also concluded that Appellant failed to establish that any traffic controls, including the stop sign and stop line on Plymouth Road, contributed to the accident. *Id.* at 493a. In this regard, the trial court again declined to consider the O'Conner report. *Id.* at 493a-94a.

On February 3, 2025, this Court issued orders at Nos. 1642 and 1643 C.D. 2025, noting that the trial court's orders did not appear to dispose of all claims against all parties, as no disposition or other final order had been entered as to Waetzman. (Orders, 2/3/2025.) We therefore directed the parties to address in their principal briefs the question of whether the trial court's orders were final and appealable. *Id.* Apparently in response to this Court's orders, on February 17, 2025, Appellant filed in the trial court a Praecipe to Discontinue and End the underlying actions as against Waetzman. (S.R. at 258b.) Appellant did not obtain the consent of any parties or leave of court prior to filing the praecipe. On March 5, 2025, Appellant filed a similar Praecipe to Discontinue and End as against Goodman Properties, again without consent of the parties or leave of court. (S.R. at 259b.) Then, on March 25, 2025, Appellant filed new Notices of Appeal from the trial court's November 21, 2024 orders. Those appeals were docketed in this Court at Nos. 515 and 602 C.D. 2025.[7]

On April 7, 2025, and May 16, 2025, the Township filed Motions to Quash all four appeals on the ground that, because Appellant's claims against Waetzman remain pending below, the trial court's November 21, 2024 orders are not final. The

---

[7] We consolidated all four appeals by order entered April 28, 2026.

School District and McNamee join in the Motions, arguing with the Township that Appellant's failure to obtain either consent of the parties or leave of court rendered the Waetzman discontinuance invalid as a matter of law pursuant to Pa.R.Civ.P. 229(b)(1). As a result, the trial court's orders are not final and appealable. *See* Pa.R.A.P. 341(b).

In the alternative, Appellees argue that, even assuming the Waetzman discontinuance is valid, Appellant's notices of appeal filed on March 25, 2025, are untimely because they were filed more than 30 days after the date the discontinuance was docketed (and served), February 17, 2025. Appellees lastly contend that the discontinuance as to Goodman Properties is irrelevant to finality because Goodman Properties settled out and was dismissed from the case via the trial court's November 4, 2024 order.

## II. ISSUES

In this Court, Appellant argues that the trial court (1) failed to consider and credit Appellant's expert reports submitted in response to Appellees' motions for summary judgment; and (2) improperly made proximate cause determinations, resolved disputed issues of fact, and failed to consider the factual record in a light most favorable to Appellant as the non-moving party. (Appellant's Br. at 4-5.)

In response, Appellees argue that these appeals are premature and, accordingly, must be quashed. In the alternative, Appellees contend that summary judgment in their favor was appropriate on multiple grounds, including immunity and the "sudden emergency doctrine." They further argue that the trial court properly declined to consider Appellant's expert reports because Appellant did not identify the experts during discovery and untimely served the reports after the expiration of the trial court's case management order.

9

## III. DISCUSSION

Because they implicate our jurisdiction and, in this instance, are dispositive, we begin with the Township's Motions to Quash.[8]

This Court's jurisdiction over appeals from orders of the courts of common pleas generally is limited to final orders. *See* Section 762(a) of the Judicial Code, 42 Pa.C.S. § 762(a); *Mahoning Township v. Zoning Hearing Board of Mahoning Township*, 320 A.3d 861, 867 (Pa. Cmwlth. 2024). Relatedly, Pennsylvania Rule of Appellate Procedure 341(a)[9] provides that, with exceptions not applicable here, "an appeal may be taken as of right from any final order of an administrative agency or lower court." Pa.R.A.P. 341(a). Rule 341(b) defines a "final order" as one that (1) disposes of all claims against all parties; (2) is entered as a final order pursuant to Pa.R.A.P. 341(c);[10] or (3) is a qualifying Post Conviction Relief Act[11] order under Pa.R.A.P. 341(f). Pa.R.A.P. 341(b). *See also* Pa.R.A.P. 311 (allowing certain interlocutory appeals as of right), 312 and 1311 (allowing certain interlocutory appeals by permission), and 313 (allowing appeals from qualifying "collateral orders"). "The

---

[8] The appealability of trial court orders implicates our jurisdiction, is an unwaivable issue, and may be raised by this Court *sua sponte*. *Smith v. Ivy Lee Real Estate LLC,* 326 A.3d 1064, 1069 (Pa. Cmwlth. 2024); *Wells Fargo Bank, N.A. v. James*, 90 A.3d 813, 815 n.3 (Pa. Cmwlth. 2014). Questions of appealability and subject matter jurisdiction are questions of law, over which we exercise *de novo*, plenary review. *Com. ex rel. Kane v. Philip Morris, Inc.*, 128 A.3d 334, 340 n.5 (Pa. Cmwlth. 2015).

[9] Rule 341 was amended on December 11, 2025, effective July 1, 2026, with changes that do not impact the issues involved here. Nevertheless, because the trial court orders and discontinuances at issue pre-date the effective date of the amendments, we apply the former Rule 341.

[10] Rule 341(c) provides a mechanism by which a trial court may enter a final order as to fewer than all claims against all parties upon the court's determination that "an immediate appeal would facilitate resolution of the entire case." Pa.R.A.P. 341(c).

[11] 42 Pa.C.S. §§ 9541-9546.

10

purpose of limiting appellate review to a final order is to prevent piecemeal determinations and the consequent protraction of litigation." *In re First Baptist Church of Spring Mill*, 22 A.3d 1091, 1095 (Pa. Cmwlth. 2011) (citations and quotations omitted).

As to the impact of a discontinuance on finality, Rule 229(a) of the Pennsylvania Rules of Civil Procedure provides, in pertinent part, that "[a] discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before commencement of the trial." Pa.R.Civ.P. 229(a). A discontinuance terminates an action without a disposition on the merits and places a plaintiff in the same position as if the action had never been filed. *Kalmeyer v. Municipality of Penn Hills*, 197 A.3d 1275, 1279 (Pa. Cmwlth. 2018). At that point, no proceeding remains over which the trial court has jurisdiction. *Id. See also Wilmington Township v. Hahn* (Pa. Cmwlth., No. 457 C.D. 2019, filed March 2, 2020), slip op. at 12 (praecipe to discontinue functions as a final order).[12]

Pertinent here, Rule 229(b) governs partial discontinuances against fewer than all defendants. It provides, with certain inapplicable exceptions, that "a discontinuance may not be entered as to [fewer] than all defendants except upon the written consent of all parties or leave of court upon motion of any plaintiff or any defendant for whom plaintiff has stipulated in writing to the discontinuance." Pa.R.A.P. 229(b)(1). Further, in actions involving the claims or beneficial interests of minors, court approval of discontinuances is mandatory. *See* Pa.R.Civ.P. 229(c), Note ("Court approval of a discontinuance must be obtained in . . . an action for wrongful death in which a minor is a beneficiary interested, [Pa.R.Civ.P.] 2206(a)"); Pa.R.Civ.P.

---

[12] We may cite to unreported decisions of this Court issued after January 15, 2008, for their persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code. § 69.414(a).

229, Comment-1991 ("[T]here are several rules which would still require court approval of a discontinuance: . . . [Pa.R.Civ.P.] 2206(a) governing wrongful death actions involving minors"); Pa.R.Civ.P. 2206(a) ("No action for wrongful death in which a minor or an incapacitated person has an interest shall be discontinued . . . until the court, upon petition of any party in interest, shall allow the discontinuance . . . ."). Where a trial court's order grants summary judgment in favor of fewer than all defendants, a partial discontinuance as to the remaining defendants will render the summary judgment orders final as of the date the discontinuance is entered on the trial court's docket. *See Burkey v. CCX, Inc.*, 106 A.3d 736, 738-41 (Pa. Super. 2014).[13]

Here, Appellant does not dispute that the trial court's November 21, 2024 orders were not final because they did not dispose of all claims against all parties. Relatedly, Appellant also does not dispute that the notices of appeal filed on November 22, 2024, and docketed in this Court at Nos. 1642 and 1643 C.D. 2024, were premature.[14] Instead, Appellant ostensibly argues that his voluntary and unilateral discontinuances of both Waetzman and Goodman Properties accomplished finality as of March 5, 2025, and that he timely filed new notices of appeal on March 25, 2025. We cannot agree.

First, we agree with Appellees that the Waetzman discontinuance is invalid, for two reasons.[15] Rule 229(b)(1) expressly requires the consent of all parties

---

[13] Although they are not binding on this Court, we may cite to Superior Court opinions for their persuasive value where they address analogous issues. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[14] Appellant characterizes these notices of appeal as being "protective" in nature. *See* Appellant's Response in Opposition, 5/27/25, at 5 n.3.

[15] Although Appellant appears to have abandoned any attempt to argue that the Waetzman discontinuance alone renders final the trial court's November 21, 2024 orders, we nevertheless must **(Footnote continued on next page…)**

or leave of court before a discontinuance may be entered as to fewer than all parties. The failure to obtain one or the other will render the discontinuance ineffective. *See, e.g.*, *Toney v. Chester County Hospital*, 961 A.2d 192, 196-97 (Pa. Super. 2008) (citing *Matyas v. Albert Einstein Medical Center*, 310 A.2d 301, 302 (Pa. Super. 1973) (stipulation of discontinuance without single remaining defendant's signature invalid to render order final and appealable; appeal filed thereafter was premature and quashed). Moreover, because this action involves minor beneficiaries to a wrongful death action, court approval for any discontinuance is obligatory. *See* Pa.R.Civ.P. 2206(a); Pa.R.Civ.P. 229(c), Note; Pa.R.Civ.P. 229, Comment--1991. Appellant's failure to comply with these mandatory prerequisites renders the Waetzman discontinuance of no effect, and, as a result, Appellant's claims against Waetzman remain pending in the trial court.[16] *Matyas*, 310 A.2d at 302 (improperly filed discontinuance was a nullity); *Solomon v. Hulme* (Pa. Cmwlth., No. 681 C.D. 2017, filed April 17, 2018), slip op at 7 n.6 (citing *Matyas*).

---

address its impact. If the Waetzman discontinuance is effective, then, as Appellees argue, all four of Appellant's appeals are untimely and this Court is without jurisdiction.

[16] Ordinarily, the method to challenge an improperly filed discontinuance is a motion to strike. *See* Pa.R.Civ.P. 229(c). In this instance, however, and contrary to Appellant's insistence that Appellees have waived the ability to challenge the defects in the discontinuances, *see* Appellant's Response, 5/27/25, at 6-8, a motion to strike was not necessary to our consideration of these issues. First, the finality and appealability of trial court orders impacts our jurisdiction, which is an unwaivable issue that we may, and here did, raise *sua sponte*. *See supra*, n.8. Second, the court approval requirement for discontinuances in wrongful death actions involving minor beneficiaries is a safeguard designed to protect the minor beneficiaries' interests, which are not adequately represented by counsel for either the plaintiff or the defendants. *See Feliciani v. Impact Project, Inc.*, 347 A.3d 682, 688 (Pa. Super. 2025) (court approval requirement is to "ensure that a minor's interest is protected and that any settlement entered into for the benefit of the minor is fair and equitable") (citation and quotations omitted). The failure of a party to file a motion to strike should not, therefore, waive the defects in a discontinuance that does not comply with Pa.R.Civ.P. 2206(a).

13

Second, we also agree with Appellees that Appellant's attempt to discontinue the action against Goodman Properties was neither necessary nor effective in accomplishing finality. Goodman Properties was settled out of the underlying action weeks prior to the trial court's November 21, 2024 orders, and—to state the obvious—a discontinuance as to an already-dismissed party is a nullity. Appellant nowhere in his filings acknowledges Goodman Properties' prior dismissal, and the discontinuance in any event suffers from the same defects as the Waetzman discontinuance; Appellant obtained neither the parties' consent nor leave of court prior to filing it.

## IV. CONCLUSION

In sum, because the trial court's November 21, 2024 orders do not dispose of all claims against all parties and have not been rendered final by any subsequent discontinuance or order of court, they remain interlocutory. We, as a result, are constrained to conclude that all four appeals filed from those orders are premature and must be quashed for lack of jurisdiction.[17]

_____

PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[17] We note that Appellant filed both the Waetzman and Goodman Properties discontinuances after filing notices of appeal on November 22, 2024. It is unclear whether the trial court retained jurisdiction under Pa.R.A.P. 1701 to approve the discontinuances during the pendency of those appeals. *See* Pa.R.A.P. 1973(b), *City of Philadelphia v. Kalidave, LLC* (Pa. Cmwlth., No. 1079 C.D. 2019, filed August 16, 2022), slip op. at 16 n.26; *Estate of Paterno v. National Collegiate Athletic Association (NCAA)*, 168 A.3d 187, 202-03 (Pa. Super. 2017). If not, this would only reinforce our conclusion that Appellant's unilateral discontinuances were not effective to render final the trial court's orders.

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Pascal Lombardot, Individually and as Administrator of the Estate of Yu-Yuan Lin, Deceased,<br>        Appellant<br><br>        v.<br><br>Wissahickon School District, Dominic McNamee, Commonwealth of Pennsylvania, Department of Transportation, Sidelines Tree Removal, Delaware Valley Regional Planning Commission, Montgomery County, Whitpain Township, McMahon Associates, Inc., Simone Collins, Inc., The Waetzman Planning Group, Inc., Urban Partners, Chambers Associates, Inc., Herbert H. Metz, Inc. d/b/a Metz Engineers, Guidemark, Inc., Asplundh Tree Expert, LLC, Davey Resource Group, Inc., The Davey Tree Expert Company, Blue Bell Meadows, LLC d/b/a Bluestone Country Club, BSK Meadows Realty Partners, LP, Meadows Realty GP, LLC, Goodman Properties and Pennidhi Vee Karlakunta | **CASES CONSOLIDATED**<br><br><br><br>Nos. 1642 & 1643 C.D. 2024<br><br>Nos. 515 & 602 C.D. 2025 |

## ***ORDER***

AND NOW, this 18th day of June, 2026, it is ORDERED that the appeals filed at Nos. 1642 and 1643 C.D. 2024, and Nos. 515 and 602 C.D. 2025, are hereby QUASHED.

_____
PATRICIA A. McCULLOUGH, Judge